UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————X

Franklin Joaquin, Eduardo Casusol,
Mohammed Miah, Milagros Carlin Bergante,        Case No.    23cv1235
and Oscar Jairo Rodriguez Londono,

                              Plaintiffs,              Jury Trial Demanded

              -v.-


New York Athletic Club,

                              Defendant.
——————————————————————————X

     Plaintiffs Franklin Joaquin ("Joaquin"), Eduardo Casusol ("Casusol"), Mohammed Miah ("Miah"), Milagros Carlin Bergante ("Carlin"), and Oscar Jairo Rodriguez Londono ("Rodriguez") (collectively, "Plaintiffs")  by and through their  attorneys Nisar Law Group, PC, complaining of New York Athletic Club ("NYAC")  allege as follows:

## <u>NATURE OF THE CASE</u>

1.     Plaintiffs, waitstaff and bartenders at the New York Athletic Club bring this action against Defendant pursuant to the <u>Fair Labor Standards Act</u>, 29 U.S.C. § 201, *et seq.* ("FLSA") and the <u>New York State Labor Law,</u> Articles 6 & 19 ("NYLL") and their respective rules and regulations for failure to pay minimum wage and overtime wages due to each of Plaintiffs for their respective hours worked up to and in excess of forty (40) hours per workweek during the relevant time period and continuing to date.  Plaintiffs further bring this action to recover Plaintiffs' tip shares from employees' tip pools by the employer NYAC during the relevant time period to date pursuant to FLSA §203(m)(2) and 216(b), NYLL 196-D, 12 NYCRR 146-2.17 to 2.19.  As a result of Defendants' violations of the NYLL and FLSA, Plaintiffs have suffered reductions in their wages and seek and order for: (a) the full amount of underpayment of minimum and overtime wages, and tip shares; and (d) an additional amount as liquidated damages equal to one hundred percent of the

total amount of the wages found to be due in amounts to be determined at the time of trial; (b) attorneys' fees and costs, (c) prejudgment and post judgment interest;  (d) NYLL §195 penalties for failure to provide proper and accurate wage notices and statements.

2.      Plaintiffs further bring claims for Retaliation for complaining to the Employer New York State Athletic Club of its wage and hour policies and practices pursuant to FLSA §215 and NYLL §215.  Plaintiff Carlin was terminated on or about June 2019 after she inquired/complained of Defendants' tip pool policies and practices on behalf of herself and all other named Plaintiffs in this action.  Defendant's pretextual discharge claimed that Plaintiff Carlin attempted to share in the pool during a shift she did not work.  However, Plaintiff Carlin was reinstated to employment when it was determined that Defendant NYAC's accusations were unfounded.  From on or about June 2019 and continuing to date, all of named Plaintiffs' overtime hours were reduced and given to other waitstaff with less seniority or on call waitstaff to intentionally deprive Plaintiffs' of their seniority rights to work overtime hours.  Plaintiff Carlin has been silenced under continuing threats of pretextual discharge by Defendant NYAC, from making any inquiries that may be construed as complaints to the employer about their wage and hour policies and practices.  Plaintiff Carlin has suffered general mental anguish from this constant and continuing threats of discharge as evidenced by the continuing reduction of her work hours and wages.  Accordingly, Plaintiffs each seek an order for: (a) reinstatement of their overtime hours based on their seniority;  (b) back pay; (c) compensatory and punitive damages; (d) attorneys fees and costs; (e) pre and post judgment interest; (f) and any and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court is proper under FLSA 29 USC §201 et seq. and 28 U.S.C. §§ 1331 and 1343.

4.      The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law

pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims have occurred.

6.      Plaintiffs were at all relevant times waiters, servers, bartenders or manual laborers who were non-exempt from the overtime provisions of the FLSA and NYLL specifically 12 NYCRR §146.

7.      During the relevant time of each Plaintiffs' employment, Defendant paid them by the shift, e.g. breakfast 6am to 10am, lunch 10am to 3pm and dinner 4pm to 10pm to avoid paying overtime to each of plaintiffs.  Each of Plaintiffs worked at least two to three shifts continuously at a minimum of 60 hours per week and approximately 9 to 15 hours per day.

8.      During the relevant time of each Plaintiffs' employment, NYAC willfully failed to pay each of Plaintiffs' their respective overtime wages for each of their actual hours worked beyond 40 hours in a workweek.

9.      12 NYCRR 146-1.4 states in relevant part, "An employer shall pay an employee for overtime at a wage rate of 11/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek…It is a violation of the overtime requirement for an employer to subtract the tip credit [if any] first and then multiply the reduced rate by one and one half,"

10.     Pursuant to 22 NYCRR 146-1.6, Defendants failed to compensate each of Plaintiffs one hour of pay at minimum wage whenever each of Plaintiffs' workday exceeded 10 hours from the time each of Plaintiffs started their workday through the end of their workday including any break times. The additional hour of pay is not payment for time worked and need not be included in the regular rate for the purpose of calculating overtime pay.

11.     Plaintiffs each seek overtime and spread of hours wage underpayments pursuant to NYLL §650 et seq., and 12 NYCRR §146 et seq., and liquidated damages pursuant to NYLL §198-1-a et

seq. wage notice and wage statement penalties pursuant to NYLL §195, attorneys fees, costs and pre and post judgment interest pursuant to NYLL §198 et seq.

## STATEMENT OF FACTS

### The Defendant

12.      Based upon information and belief, Defendant New York Athletic Club of the City of New York ("NYAC") is a private social and athletic club located at 180 Central Park South, New York, NY 10019.  The club has approximately 8,600 members and regularly hosts events for its members serviced by NYAC's full time staff including bartenders and wait staff during the months of January through June and September through December of each calendar year.

13.      Based upon information and belief, Defendant NYAC is engaged in ordinary commercial activities that result in sales made or business done, specifically, it operates a restaurant and banquet hall and provides waitstaff and hospitality services for fees.  Therefore, NYAC is a covered enterprise within the meaning of the FLSA.

14.      Based upon information and belief, NYAC has a website address: www.nyac.org

15.      At all times relevant, Plaintiffs were full-time employees of Defendant.

16.      At all times relevant, Defendant had the power to, and was responsible for, determining the wages to be paid to Plaintiffs.

17.      At all times relevant, Defendant had the power to, and did in fact, establish the terms of Plaintiffs' employment, including but not limited to Plaintiffs' duties, schedules, and rates of pay.

18.      The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee and an employee is anyone who is suffered or permitted to work.  As a result, including as further described below, both Defendant is liable as "employer" under the FLSA.

19.      Defendant, officers and managers are also jointly and severally liable as joint employers

under 29 C.F.R. § 791.2 for the violations complained of herein.

20.     Based upon information and belief, at all relevant times, Defendants were engaged in interstate commerce within the meaning of the FLSA in that Defendants: (a) had employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person; and (b) had an annual gross volume of sales of not less than $500,000.00

21.     Based upon information and belief, Defendant NYAC has club members who pay annual dues from the tri-state area and throughout the nation with annual revenues that far exceed $500,000.

22.     At all relevant times, Plaintiffs were employed by Defendant NYAC within the meaning of the NYLL §§ 2 and 651.

23.     At all relevant times, Plaintiffs were non-exempt employees within the meaning of FLSA and NYLL and NYCRR §146 et seq.

THE PLAINTIFFS

24.     At all relevant times, Plaintiffs were residents of New York City within the state of New York.

25.     At all relevant times, Plaintiffs worked at NYAC's New York, NY ("Manhattan") location as waiters, servers or bartenders.

26.      Plaintiff Franklin Joaquin ("Joaquin") regularly worked as a waiter approximately seven (7) days per week, 15 hours per day or approximately 105 hours per week during the period on or about January 1, 2017 through on or about June 2019.

27.      From on or about June 2019 to date, Plaintiff Joaquin's schedule was approximately 55 to 65 hours per week.

28.     Plaintiff Eduardo Casusol ("Casusol") regularly worked as a waiter at NYAC from on or about March 30, 1994 to date.

29.     Plaintiff Casusol regularly worked approximately seven (7) days per week, 15 hours per day or approximately 105 hours per week during the period on or about January 1, 2017 through on or about June 2019.

30.     From on or about June 2019 to date, Plaintiff Casusol's schedule was reduced to approximately 55 to 65 hours per week.

31.     Plaintiff Mohammed Miah ("Miah") regularly worked as a waiter at NYAC from on or about May 2, 2003 to date.

32.     Plaintiff Miah regularly worked approximately five (5) or six (6) days per week, approximately 12 hours per day or approximately 60 to 72 hours per week during the period on or about January 1, 2017 through on or about June 2019.

33.     From on or about June 2019 to date, Plaintiff Miah's schedule was reduced to approximately 55 to 65 hours per week

34.     Plaintiff Milagros Carlin Bergante ("Carlin") regularly worked as a waiter at NYAC from on or about May 18, 2004 and as a server captain during the period on or about 2017 to date.

35.     Plaintiff Carlin regularly worked approximately five (5) or six (6) days per week, approximately 12 hours per day or approximately 60 to 72 hours per week during the period on or about January 1, 2017 through on or about June 2019.

36.     On or about June 2019 to date, Plaintiff Carlin's schedule was reduced to approximately 50 to 60 hours per week.

37.     Plaintiff Oscar Jairo Rodriguez Londono ("Rodriguez") regularly worked as a waiter at NYAC from on or about August 28, 2005 to date.

38.     Plaintiff Rodriguez regularly worked approximately five (5) or six (6) days per week, approximately 12 hours per day or approximately 60 to 72 hours per week during the period on or about January 1, 2017 through on or about June 2019.

39.     From on or about June 2019 to date, Plaintiff Rodriguez schedule was reduced to approximately 40 hours or less per week.

Defendant's pay rate scheme designed to obfuscate Plaintiff's rights under the FLSA and NYLL and underpay Plaintiffs' wages

40.     During the relevant time period from on or about January 2017 to date, Defendant scheduled Plaintiffs to work daily shifts as follows:

Breakfast: 5:30am to 11am; Lunch 10 am to 4pm; Dinner 3:30 to midnight.

During on or about 2017 shift wage rates were: Breakfast $18.59; Lunch $14.87; Dinner: $10.62

During 2018 through on or about November 30, 2022: Breakfast $19:54; Lunch $15.39; Dinner: $10.99

Based upon information and belief, during on or about December 1, 2022 to date: Breakfast $22.57; Lunch $18:06; Dinner: $12.90

41.     Based upon information and belief, Defendant took a tip credit for Plaintiff's dinner shift based on Plaintiff's tipped wages applied to the hourly wage rate in order to bring the actually paid wage rate to the applicable minimum wage rate.  For example during 2018, the minimum wage rate was $15 per hour but Plaintiff's paid a dinner wage rate of approximately $12.90 per hour by applying a tip credit of approximately $2.10 per hour.

42.     Based upon information and belief, Pursuant to NYCRR §146-2.18 and 2.19 Defendant failed to make Plaintiffs' tip share available for their review and failed to clearly identify gratuities or tips to customer members.  Thereby Defendant waived its lawful ability to take a tip credit during the relevant time period by unlawfully withholding each of Plaintiff's tipped wages.

43.     Plaintiffs were part of a tip pool and therefore were entitled to split tips with other waitstaff and/or bartenders based on their duties, not titles, for the relevant shifts that they worked pursuant to NYLL regulation NYCRR §146-2.14 et seq.

44.     Pursuant to NYCRR §146-2.17 Employers who operate a tip sharing or pooling system must establish, maintain, and preserve for at least six years records which include: (1) a daily log of the tips…whether in cash or by credit card; (2) list of eligible employees to share in the tips or tip pool; (3) share of tips; (4) amount in tips that each employee receives from the tip share or tip pool by date.

45.     Based on Defendant's withholding of Plaintiffs' tips or gratuities and forfeit of the tip credit, Defendant is liable for underpayments of Plaintiffs' minimum wages for all dinner shifts they each worked during the relevant time period.

46.     Defendant underpaid to date, each of Plaintiff's overtime wages by failing to calculate based on a weighted wage rate.

47.     Pursuant to NYLL, where there are multiple wage rates for an employee, overtime must be calculated at a "weighted average rate" based on the hours worked per task at the specified wage rate.

48.     Pursuant to NYCRR 146-1.4, "[i]t is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate by one and one half."

49.     Based upon information and belief, during the relevant time period to date, Defendant unlawfully calculated each of Plaintiffs' overtime rate by subtracting the tip credit first and multiplied that unlawful rate by one and one half.

50.     On or about June 2019, Plaintiff Carlin was retaliated against by Defendant in violation of FLSA 29 USC §215 (a)(3) for inquiring and ensuring the Plaintiffs' tip pool and distribution of tips.  Defendant terminated Plaintiff Carlin for participating in the tip pool which was later determined to be unfounded and Plaintiff Carlin was reinstated to her employment.

51.     After Plaintiff was reinstated to her employment on or about 2019, Defendant violated the seniority policy in scheduling and reduced Plaintiff Carlin and the other named Plaintiffs' hours of work in retaliation for inquiring about their tip pool shares.  Plaintiffs' work hours, specifically overtime hours

were given to employees' with less seniority or on call employees in violation of Defendants' seniority policy.  This retaliation in reducing all named Plaintiffs' work hours continues to date.

52.     From on or about June 2019 and continuing to date, all of named Plaintiffs' overtime hours were reduced and given to other waitstaff with less seniority or on call waitstaff to intentionally deprive Plaintiffs of their seniority rights to work overtime hours.

53.     Plaintiff Carlin has been silenced under continuing threats of pretextual discharge by Defendant NYAC, from making any inquiries that may be construed as complaints to the employer about their wage and hour policies and practices.  Plaintiff Carlin has suffered general mental anguish from this constant and continuing threats of discharge as evidenced by the continuing reduction of her work hours and wages.

54.     After Plaintiff Carlin's reinstatement to work in 2019, Defendant prevented Plaintiff Carlin and the named Plaintiffs' from obtaining any information about their tip pool shares to ensure they received all of their earned tip shares.  In violation of the FLSA, NYLL, rules and regulations, Plaintiffs were not permitted to participate in the distribution of their own tip shares during the relevant time period.

55.     Defendant's violation of federal and state tip sharing / pooling laws and retaliation continues to date.

56.     For retaliation against them Plaintiffs each seek an order pursuant to FLSA §215 and NYLL §215 for: (a) reinstatement of their overtime hours based on their seniority;  (b) back pay; (c) compensatory and punitive damages; (d) attorneys fees and costs; (e) pre and post judgment interest; (f) and any and further relief as the Court deems just and proper.

57.     Based upon information and belief, Defendant additionally failed to use a weighted average pay rate to determine Plaintiffs' overtime wage rates.

58.     Because Defendant took a tip credit and imposed multiple hourly rates for the same duties or tasks during a workday, it made it impossible for Plaintiff to comprehend and track what they

were owed in proper minimum and overtime wages.

59.     Each of Plaintiffs' wage statements listed various pay rates but failed to properly provide Plaintiffs with a proper accounting of their lawful wages and the proper hours applied to each hours of pay including but not limited to the tip credits taken by Defendant, the weighted average rate upon which overtime was calculated, the percentage of tips allocated to each Plaintiff and overtime hours per 40 hours and per shift worked.

60.     During the relevant time period from on or about January 2017 to date, notwithstanding the multiple shift rates detailed throughout this complaint, Plaintiff Carlin's regular wage rate was $26 per hour.

61.     Defendant failed to calculate Plaintiff Carlin's overtime wages at one and one half times her regular rate of $26 per hour or $39 per hour for all of her hours worked beyond 40 hours in a workweek.

62.     Defendant failed to calculate all other Plaintiffs' overtime wages at the weighted average regular rate as follows:  2017: not less than $14.82 per hour; 2018 not less than $15.88 per hour; 2019 to on or about November 30, 2022 not less than $16.54 per hour; and December 1, 2022 to date, not less than $18.54 per hour.  These weighted rates are based on estimates of hours worked per shift rates and are good faith estimates without the benefit the employer's business records; and are to be determined at the time of trial.

63.     Based upon information and belief Defendant NYAC, its officers, managers and supervisors had authority and control over the hiring, discipline, termination and other terms and conditions of Plaintiffs' employment including but not limited to their wages and hours of work.

64.     Based upon information and belief named Defendant had a duty to maintain books and records concerning the employment of Plaintiffs including but not limited to their hours of work, schedules, list of tip pools and their participants with amounts distributed to each employee by date,

pursuant to FLSA rules and regulations for the previous three years and for the previous six years pursuant to NYLL rules and regulations from the date of this complaint.

65.     Plaintiffs were not provided with tip pool lists and relevant amounts at any relevant time in compliance with the FLSA and NYLL rules and regulations.

66.     None of the Plaintiffs were paid their tip shares for all shifts that they worked in violation of the FLSA and NYLL and are entitled to recover such shares for the relevant time period with liquidated damages, attorneys fees and costs pursuant.

67.     Plaintiffs were not provided with accurate wage Notices including but not limited to a statement of their regular and overtime wage rates required by NYLL §195 at the time of hire or at any other relevant time during their respective employment with Defendant.

68.     Plaintiffs were not provided with a proper wage statements reflecting their actual overtime hours and attendant overtime wages pursuant to NYLL 195 at any relevant time of their respective employment with Defendant NYAC.

69.     Defendants engaged in their unlawful conduct pursuant to its organizational policy of minimizing labor costs and denying employees compensation by knowingly violating the NYLL

70.     Based on the foregoing, Plaintiffs bring this action to remedy Defendants' violations of the FLSA and NYLL and to recover their unpaid minimum wage, overtime wage, tip shares, 100% liquidated or double damages, reinstatement of their overtime hours, compensatory and punitive damages, attorneys fees, costs and interest.

### AS AND FOR A FIRST CAUSE OF ACTION
### DEFENDANT'S UNDERPAYMENT OF MINIMUM WAGES IN VIOLATION OF FLSA

71.     Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth herein.

72.     Defendant willfully employed Plaintiffs in the aforementioned enterprise and failed to compensate Plaintiffs at the required minimum hourly rate up to 40 hours in a workweek for their

respective employment.

73.      29 CFR §203(m)(2)(A) permits an employer to take a tip credit on payment of hourly wage rates up to  the minimum wage rate based on an employee's tips only if the employee was provided notice of the tip credit and all tips due to the employee were paid to the employee.

74.      29 CFR §203(m)(2)(B) prohibits an employer from taking any portion of any employee's tips regardless of whether or not it takes a tip credit towards the hourly minimum wage rate.

75.      As set forth throughout this Complaint, Defendant forfeited its right to any tip credit pursuant to CFR§ 203(m)(2)(A) and (B)and thereby underpaid Plaintiffs' minimum wage during the relevant time period of their respective employment.

76.      Defendant's failure to pay Plaintiffs the mandated minimum hourly pay in accordance with the FLSA was a direct violation of the FLSA, 29 U.S.C. § 206.

77.      Defendants' failure to pay proper minimum wages for each hour worked was willful within the meaning of 29 U.S.C. § 255.

78.      Defendant's willful and repeated failure to comply with the FLSA has caused Plaintiff to suffer loss of wages.

79.      Accordingly, Plaintiffs each seek to recover underpayments of their minimum wages continuing to date, double damages or 100% liquidated damages, attorneys fees, costs and interest pursuant to FLSA 29 USC §260 in amounts to be determined at the time of trial.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW § 652(1) MINIMUM WAGE

80.      Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth herein.

81.      As alleged throughout this compliant, Plaintiffs were employees of Defendant within the meaning of the NYLL §650 et seq.

82.      As alleged throughout this complaint, Defendant failed to pay Plaintiffs the required

minimum hourly wage rate for one hour of work up to 40 hours in a workweek.

83.     As alleged throughout this Complaint, Defendants violated NYCRR §146-2.17, 2.18 and 2.19 and unlawfully withheld Plaintiffs' tips or gratuities and thereby forfeited its tip credit towards payment of minimum wage to Plaintiffs.  Accordingly Defendant failed to pay minimum wage to each of Plaintiffs in violation of  § 652(1); New York Labor Law ("NYLL"), Article 19.

84.     Defendants' violations of the NYLL were willful.

85.     Due to Defendant's NYLL violations, Plaintiffs are entitled to recover from Defendant their unlawfully retained tips and unpaid minimum wage continuing to date, in an amount to be determined at trial, plus an amount equal to 100% of Plaintiff's unpaid wages in the form of liquidated damages, as well as attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

### AS AND FOR A THIRD CAUSE OF ACTION
### VIOLATION OF THE FLSA 29 USC §207 (UNPAID OVERTIME)

86.     Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth herein.

87.     Defendant employed or permitted Plaintiffs to suffer work for workweeks longer than forty (40) hours during the relevant time period and failed to compensate Plaintiffs for their actual hours worked in excess of forty (40) hours per week at a rate of one and one half times their lawful regular wage rate per hour.

88.     As alleged throughout this complaint, Defendant failed to pay Plaintiff Carlin overtime wages at one and one half times her regular rate of $26 her hour for all of her overtime hours worked.

89.     As alleged throughout this complaint, Defendant failed to pay all other Plaintiffs their overtime wages at one and one half times their weighted average regular rate *before* any tip credits were applied.

90.     As alleged throughout this complaint, Defendant did not calculate Plaintiffs' weighted average rate as required under the FLSA and NYLL due to Defendant's multiple daily wage rates for waitstaff based on breakfast, lunch and dinner shifts.  Instead, Defendant calculated Plaintiffs' overtime rate based on a regular rate below minimum wage or after Defendant first applied the tip credit.

91.     As alleged throughout this complaint, the NYLL rules and regulations prohibits an employer from deducting a tip credit from the minimum wage rate before calculating the overtime wage rate at one and one half times minimum, regular or weighted average regular hourly wage rate.

92.     As alleged throughout this complaint, Defendant willfully and unlawfully calculated all Plaintiffs' hourly overtime wage at the already tip credited rate that was below the minimum wage rate which resulted in underpayments of overtime wages.

93.     As alleged throughout this complaint, Defendant willfully failed to provide notice to Plaintiffs either on their wage notice acknowledgments or wage statements that it would take the tip credit and by how much under FLSA and/or NYLL.

94.     As alleged throughout this complaint, Defendant willfully calculated Plaintiffs' overtime wages without using a weighted average regular rate so that  Defendant did not have to pay Plaintiffs their full minimum and overtime wage rates.  Defendant willfully used a multiple hourly rate scheme for similar work within one workday to confuse Plaintiffs and enabled Defendant to underpay Plaintiffs their overtime wages.

95.     As alleged throughout this complaint, Defendant failed to pay overtime wages to Plaintiffs in violation of the FLSA, 29 U.S.C. §207 and its implementing regulations.

96.     Defendant's failure to pay each of Plaintiffs proper overtime wages for each hour worked over forty (40) per week was willful within the meaning of 29 U.S.C. §255.

97.     Defendant's failure to comply with the FLSA has caused each of Plaintiffs to suffer a loss

of wages.

98.     Based on the foregoing, Plaintiffs seek to recover underpayments of their overtime wages continuing to date, in an amount to be determined at trial, for their hours worked in excess of or beyond 40 hours in a workweek during the relevant time period to date, double or 100% liquidated damages of the underpayment of overtime wages, interest, attorneys fees and costs pursuant to 29 USC §260.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Violation of NYLL 22 NYCRR 146 et seq. – Unpaid Overtime Wages

99.     Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth herein.

100.    As alleged throughout this complaint, Plaintiffs were employed by Defendants within the meaning of NYLL §651 et seq. and 22 NYCRR §146-1.1 and 1.4.

101.    During all relevant times of Plaintiffs' respective employment, Defendants failed to maintain accurate time records that recorded Plaintiffs' respective time that they arrived at work, together with the time they took work breaks and the time they ended work in violation of 12 NYCRR §146.

102.    As alleged throughout this Complaint Plaintiffs regularly worked hours in excess of forty (40) hours per work week during  the relevant time period of their respective employment.

103.    As alleged throughout this Complaint, Plaintiffs were non-exempt hospitality employees but were not properly paid over time wages in violation of  NYCRR §146-2.17 to 2.19 and NYCRR §146-1.4.

104.    As alleged throughout this complaint, Defendants failed to pay Plaintiff Carlin overtime wages at one and one half times her regular rate of $26 her hour for all of her overtime hours worked.

105.    As alleged throughout this complaint, Defendants failed to pay each of all other Plaintiffs

any overtime wages of one and one-half times the minimum or weighted average regular hourly rate of pay for all of their actual overtime hours worked in violation of NYCRR §146 et seq continuing to date.

106.    Through its knowing or intentional failure to pay Plaintiffs' overtime wages for hours worked in excess of 40 hours per workweek as alleged throughout this Complaint, Defendant has willfully violated NYLL §650 et seq and 12 NYCRR §146-1.4

107.    Defendant's unlawful conduct as described *supra* was willful and intentional.

108.    Defendant is an employer with unlimited resources and was aware or should have been aware that its practices were in violation of overtime wage laws, rules and regulations as detailed in this Complaint.

109.    Accordingly, each of Plaintiffs seek to recover their respective unpaid overtime wages continuing to date, in an amount to be determined at trial, liquidated damages of 100% of unpaid overtime wages, attorneys fees, penalties, costs pre and post judgment interest pursuant to NYLL§ 198.1-a.

### AS AND FOR A FIFTH CAUSE OF ACTION
**FLSA 203(m)(2) Unlawful retention of tips**

110.    Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth herein.

111.    FLSA §203(m)(2)(A) permits an employer to take a tip credit towards payment of minimum wages to its employees which may not exceed the amount of the tips and may only be taken if the employer provides notice of this section to its employees and it does not retain any portion of the tips.

112.    FLSA §203(m)(2)(B) prohibits any employer from retaining any portion of tips or giving tips due to employees to a supervisor or manager, regardless of whether or not it takes a tip credit.

113.    As alleged throughout this complaint, Defendant failed to provide notice to Plaintiffs that it

would take a tip credit toward minimum wages pursuant to FLSA §203(m)(2)(A).

114.    As alleged throughout this complaint Defendant retaliated against Plaintiff Carlin on or about June 2019 because she inquired about tip pools and shares for herself and Plaintiffs for that workweek.  Defendant threatened her with discharge and after that time, Plaintiff was not provided any information or access to any information concerning tip pools that she participated in and was due a portion of those tips.

115.    As alleged throughout this complaint Defendant concealed information concerning their tip pools and shares for all shifts and unlawfully retained portions of Plaintiffs' tips.

116.    Pursuant to FLSA 216(b), Plaintiffs seek recovery of their tips unlawfully withheld by Defendant continuing to date, together with liquidated damages, attorneys fees and costs in amounts to be determined at the time of trial.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**New York Labor Law 196-D, NYCRR 146-2.17 to 2.19 Unlawful retention of tips**

117.    Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth herein.

118.    NYLL 196-D prohibits employers from demanding, accepting, directly or indirectly any portion of gratuities of an employee.

119.    NYCRR 146-§2.14 permits employees to receive tips directly or indirectly from a tip pool.

120.    NYCRR 146-§2.16 permits employees to receive a percentage from a tip pool.

121.    NYCRR 146-§2.17 requires Employers who operate a tip sharing or tip pooling system to establish, maintain, and preserve for at least six years, records that contain the following information: daily log of tips collected by each employee whether by cash or credit card; list of employees eligible to share tips; shares of each employees' tips; amounts in tips each employee received from the tip pool by date.

122.    Tip pool records must be made available to participant employees pursuant to NYCRR 146-

§2.17 (b).

123.     Pursuant to NYCRR 146-§2.15(b) the employer must permit employees to handle the distribution or sharing of tips themselves.

124.     As alleged throughout this complaint, Defendant failed to make available to Plaintiffs the tip pooling information as required under NYCRR 146-§2.17 and failed to provide Plaintiffs with their respective tip shares from the relevant tip pool for all shifts that they worked.

125.     Accordingly, Plaintiffs seek their respective unpaid tips or gratuities during the relevant time periods of their respective employment and continuing to date, pursuant to NYLL §196-D and NYCRR §146-1.1 et seq. liquidated damages, attorneys fees and costs, pre and post judgment interest, penalties and costs in pursuant to NYLL§ 198.1-a in amounts to be determined at the time of trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Retaliation in violation of FLSA §215

126.     Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth herein.

127.     Defendants violated the provisions of FLSA 29 USC §215 (a)(3) by discriminating against Plaintiffs for exercising rights protected under the FLSA.

128.     As alleged throughout this Complaint, on or about June 2019, Plaintiff Carlin inquired or complained to the Defendant and its managers or supervisors about Plaintiffs' tip shares and to ensure that Plaintiffs each received their rightful tip shares.

129.     Based upon information and belief, as alleged throughout this complaint, on or about June 2019  Defendant construed Plaintiff Carlin's inquiries about tip pools as complaints about Defendant's payroll practices and discharged Plaintiff Carlin based on the pretext that she attempted to obtain tip shares to tip pools for shifts she did not work.  Shortly thereafter during 2019, Plaintiff Carlin was reinstated and Defendant's accusations were determined to be unfounded.

130.     As alleged throughout this complaint, Plaintiff Carlin's inquiries to Defendant about tip pools were protected activity within the meaning of the FLSA.

131.     As alleged throughout this complaint, Plaintiff Carlin was terminated on or about June 19, 2019 based on a pretext that she attempted to take her tip share for tip pools for shifts she did not work.  However, Plaintiff Carlin was reinstated to her employment in 2019 with her seniority in tact because the allegations were determined to be unfounded.

132.     On or about June 2019, in addition to the retaliatory discharge of Plaintiff Carlin and her reinstatement all of the Plaintiffs had their work hours reduced to prevent them from working overtime hours in violation of the Defendant's seniority policy.  Instead, Defendant gave Plaintiffs' overtime hours to waitstaff with less seniority than Plaintiffs or "on call" wait staff.

133.     As alleged throughout this complaint, Defendant continued to conceal to date, from all named Plaintiffs their tip pool information such as the amounts of tip pools and to exercise their right to participate in the distribution of the relevant tip pools pursuant to the FLSA, NYLL, rules and regulations.  As alleged throughout this complaint, Plaintiffs did not receive their tip shares for all shifts worked.

134.     As alleged throughout this complaint, prior to on or about June 2019 Plaintiff Joaquin regularly worked 104 hours per week and at times 110 hours per week.  After NYAC reopened from the COVID 19 pandemic, Plaintiff Joaquin had his hours reduced to approximately 55 to 65 hours per week with more hours being given to other wait staff with less seniority to date.  Moreover, Plaintiff Joaquin was not paid all of this tip shares for all shifts that he worked.

135.     As alleged throughout this complaint after Plaintiff Carlin last inquired about the tip pool on or about June 2019, on behalf of herself and other Plaintiffs, her hours were reduced from approximately 65 to 70 hours per week to approximately 45 to 55 hours per week.  Plaintiff Carlin was thereafter not provided with any information of tip pools of which she was a participant and did

not receive all of her tip shares for all shifts that she worked.  Plaintiff Carlin's regular overtime hours were given to other wait staff with less seniority.

136.    As alleged throughout this complaint after Plaintiff Casusol worked similar hours to Plaintiff Joaquin.  After Plaintiff Carlin inquired about the tip pool on behalf of herself and other Plaintiffs, Plaintiff Casusol's hours were reduced from approximately 104 hours per week to approximately 60 to 70 hours per week.  Plaintiff Casusol was thereafter not provided with any information of tip pools of which he was a participant and did not receive all of her tip shares for all shifts that he worked.  Plaintiff Casusol's regular overtime hours were given to other wait staff with less seniority.

137.    As alleged throughout this complaint after Plaintiff Miah worked approximately 65 to 70 hours per week.  After Plaintiff Carlin inquired about the tip pool on behalf of herself and other Plaintiffs, Plaintiff Miah's hours were reduced to approximately 45 to 55 hours per week.  Plaintiff Miah was thereafter not provided with any information of tip pools of which he was a participant and did not receive all of her tip shares for all shifts that he worked.  Plaintiff Miah's regular overtime hours were given to other wait staff with less seniority.

138.    As alleged throughout this complaint after Plaintiff Rodriguez worked approximately 65 to 70 hours per week.  After Plaintiff Carlin inquired about the tip pool on behalf of herself and other Plaintiffs, Plaintiff Rodriguez' hours were reduced to approximately 40 hours per week.  Plaintiff Miah was thereafter not provided with any information of tip pools of which he was a participant and did not receive all of her tip shares for all shifts that he worked.  Plaintiff Miah's regular overtime hours were given to other wait staff with less seniority.

139.    Defendant violated FLSA §215 by retaliating against Plaintiffs for engaging in their protected rights by reducing their work hours for complaining or inquiring about their tip pool shares through Plaintiff Carlin.

140.    As previously alleged in this complaint, Defendant is jointly and severally liable with any

supervisors or managers who participated in the retaliation and/or withholding of Plaintiffs' tip shares.

141.    As a result of these violations and retaliation against all Plaintiffs by Defendant, Plaintiffs all suffered a reduction in hours and wages and deprived of all of their tipped wages for all shifts that they worked during the relevant time period.

142.    As a result of these violations and retaliation by Defendant that continues to date, Plaintiffs are entitled to damages as set forth in the FLSA 29 USC §215(a)(3), including but not limited to reinstatement of their overtime hours consistent with Defendant's seniority system, back pay, liquidated damages, compensatory, punitive damages and attorneys fees, costs and pre and post judgment interest.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### Retaliation under NYLL §215

143.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

144.    NYLL §215 (a) prohibits employers from retaliating against its employees for making a complaint to his or her employer that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter or any order issued by the commissioner.

145.    An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of NYLL §215.

146.    As alleged throughout this complaint, Plaintiffs suffered a reduction in hours of their work schedule and did not receive all of their tip shares in retaliation for inquiring or complaining about their tip pool share on or about June 2019.

147.    As alleged throughout this complaint, by inquiring or complaining of Defendant's payroll practices, Plaintiff Carlin engaged in protected activity on behalf of herself and other Plaintiffs within the meaning of NYLL §215(2).

148.    As alleged throughout this complaint, Defendant violated NYLL §215 by retaliating against Plaintiff Carlin as alleged throughout this complaint, for engaging in protected rights / activities by terminating her and after her reinstatement to employment and continuing to date, reduced Plaintiff Carlin and all named Plaintiffs' work hours and unlawfully retained portions of Plaintiffs' tip shares.

149.    Accordingly, Plaintiffs seek reinstatement of their overtime hours pursuant to Defendant's seniority policy,  back pay, liquidated damages, compensatory and punitive damages and attorneys fees, costs and pre and post judgment interest.

## AS AND FOR A NINTH CAUSE OF ACTION
### New York Labor Law (NYLL) § 195 – Failure to Provide Accurate Wage Statements

150.    Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth herein.

151.    As alleged throughout this complaint, Defendant failed to provide Plaintiffs with proper and accurate wage statements throughout their respective employment listing, including but not limited to:  all regular and overtime hours of work, tip credits, all tips, their respective weighted average regular and overtime rates of pay, and the basis of pay, in violation of NYLL § 195(3).

152.    Defendant failed to maintain proper and accurate time records and accurately reflect Plaintiffs' minimum and overtime hours and wages due as alleged throughout this Complaint.

153.    Due to Defendant's violations of the NYLL, Plaintiffs are entitled to recover from Defendants' statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), attorneys fees and costs pursuant to NYLL § 198 (1-d).

## AS AND FOR A TENTH CAUSE OF ACTION

### New York Labor Law – Failure to Provide Notice of Wage Rate
### at the time of hiring and/or at the time of each change in wage rate.

154.    Plaintiffs repeat and reallege each and every previous allegation made as if fully set forth

herein.

155.     Defendant failed to provide Plaintiffs at the time of hiring or at any point thereafter, a notice containing the regular and overtime rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day designated by the employer; the physical address of the employer's main office or principal place of business; the telephone number of the employer, and anything otherwise required by law, in violation of NYLL § 195(1)

156.     Based upon information and belief, at all relevant times during the respective Plaintiffs' employment, Defendants were fully aware of NYLL § 195 notices for hourly, commissioned and / or salaried employees, and that they were responsible for providing these notices to employees but intentionally withheld these notices from Plaintiffs.

157.     As alleged throughout this complaint, Defendant failed to provide Plaintiffs with the proper overtime wage rate based on a weighted average regular rate and a minimum wage rate before deducting any tip credit.  Accordingly, at all relevant times, Defendants failed to provide Plaintiffs' hourly wage rate, overtime wage rate and other required notices pursuant to NYLL § 195  at the time of hire and/or at the time of any wage rate change.

158.     Based upon information and belief, Defendant intentionally withheld these wage notices from Plaintiffs to conceal their rights and claims to their proper overtime wages for actual hours that each Plaintiff worked over 40 hours in a workweek.

159.     Due to Defendant's violations of the NYLL § 195(1),  Plaintiffs are entitled to recover from Defendants statutory damages of Fifty dollars ($50)per workday that the violation occurred, up to a maximum of Five thousand dollars ($5,000), attorneys fees and costs pursuant to NYLL § 198 (1-b).

## **PRAYER FOR RELIEF**

**WHEREFORE,** All named Plaintiffs each pray for the entry of an order and judgment against Defendant New York Athletic Club ("NYAC") for the following relief in favor of

Plaintiffs:

**A.**     Issuance of an order declaring that the practices complained of in this complaint are unlawful pursuant to the FLSA 29 USC §201, et seq. and its rules and regulations.

**B.**     Issuance of an order declaring that the practices complained of in this complaint are unlawful pursuant to New York Labor Law §195 et seq, Article 19, NYLL § 650 et seq., and NYS Rules and Regulations and Wage orders including but not limited to NYCRR §146 -1.1 et seq.; and

**C.**     Issuance of an order declaring that the tip share or pooling policies and practices are unlawful under the FLSA and NYLL; and

**D.**     Issuance of an order declaring that the reduction of Plaintiffs' overtime work hours were unlawful and retaliatory for Plaintiffs' complaints concerning the payroll practices of the Defendant that were unlawful under the FLSA § 215 and NYLL§215; and

**E.**     Award damages to each of Plaintiffs for each of their respective unpaid minimum wages pursuant to FLSA 29 USC §206; and

**F.**     Award damages to each of Plaintiffs for each of their respective unpaid minimum wages pursuant to NYLL §652 and NYCRR §146-1.1 et seq.; and

**G.**     Award damages to each of Plaintiffs for each of their respective unpaid overtime wages pursuant to FLSA 29 USC §207; and

**H.**     Award Liquidated damages pursuant to FLSA 29 USC §260, attorneys fees and costs pursuant to FLSA 29 USC §216(b);

**I.**     Award damages to each of Plaintiffs for each of their respective unpaid overtime wages pursuant to NYLL §651 et seq. and NYCRR §146 et seq. and an additional and equal amount as liquidated damages pursuant to NYLL §198(1-a) and § 663(1) in amounts to be determined at the time of trial; and

**J.**      Award damages to Plaintiffs for all unlawfully withheld tips or gratuities pursuant to FLSA 216(b) and 29 CFR 203(m)(2)(A) and (B).

**K.**      Award damages to Plaintiffs for all unlawfully withheld tips or gratuities pursuant to NYLL §196-D and NYCRR §146 1.1 et seq.; and

**L.**       For all unpaid minimum, overtime and tip share wages, award liquidated damages pursuant to FLSA §216(b), NYLL §198(1-a) and § 663(1) in amounts to be determined at the time of trial; and

**M.**      Order reinstatement of Plaintiffs' overtime hours / schedules to in compliance with the Defendant's seniority policy pursuant to FLSA §215 and/or NYLL §215;

**N.**      Award Plaintiffs statutory penalties of fifty dollars ($50) per work day up to five thousand dollars ($5,000) for Defendants' failure to provide Plaintiffs with wage notices at the time of hiring, or at any point thereafter, pursuant to NYLL § 195, §198 (1-d); and

**O.**      Award Plaintiffs  statutory penalties of two hundred fifty dollars ($250) per workday up to five thousand dollars ($5,000) for Defendants' failure to provide each of Plaintiffs with accurate wage statements, pursuant to NYLL § 195, §198 (1-d); and

**P.**      Award pre-judgement interest of nine per cent per annum (9%) pursuant to NYLL §198 and the New York Civil Practice Law and Rules §§ 5001- 5004; and

**Q.**      Award post-judgment interest pursuant to the New York Civil Practice Law and Rules § 5003; and

**R.**      Award attorney's fees and costs pursuant to FLSA §216(b), NYLL §§ 198 and 663(1); and

**S.**      Any and such other further relief as this Court deems just and proper.

Dated:   New York, NY
             February 14, 2023

                                        Nisar Law Group, PC
                                        Attorneys for Plaintiffs

                                        /s/ Susan Ghim
                                        _____

             BY:     Susan Ghim, Of Counsel
                       60 East 42nd Street, Suite 4600
                       New York, NY 10165
                       Ph. 646-889-1011
                       Email: SGhim@Nisarlaw.com