USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/12/2023



December 11, 2023

151 WEST 42ND STREET   49TH FLOOR   NEW YORK, NY 10036
T 212.307.5500   F 212.307.5598   www.Venable.com

**Nicholas M. Reiter**
t 212.370.6296
f 212.307.5598
NMReiter@Venable.com

**Via ECF**
Hon. Gregory H. Woods
U.S. District Judge
U.S. District Court, S.D.N.Y.
500 Pearl Street, Room 2260
New York, New York 10007

**MEMORANDUM ENDORSED**

Re: *Joaquin et al. v. New York Athletic Club et al.*, Case No. 1:23-CV-01235-GHW
<u>Pre-Motion Conference Request Regarding Proposed Protective Order</u>

Dear Judge Woods:

This law firm represents Defendants New York Athletic Club (the "Club") and Javier Vargas (collectively, "Defendants") in the above-referenced matter. Pursuant to Rule 2.E.ii of the Court's Individual Rules and Practices, the parties respectfully request a pre-motion conference to address a discovery dispute. As set forth below, Defendants seek a protective order preventing the disclosure and misuse of confidential pricing information and the names and contact information of the Club's customers.

## Relevant Background

This is a wage-and-hour case. Plaintiffs are employed as servers at the Club. They perform waiter and bartender duties for corporate conferences, birthday parties, weddings, and similar events (often referred to as "banquet events"). Like many hospitality industry employers, the Club charges its customers an automatic service fee as a percentage of the total food and beverage sales associated with each banquet event. The automatic service fee is a gratuity for employees. The Club does not keep *any* portion of the automatic service fee. Instead, pursuant to the Club's tip pooling program, 100% of the automatic service fee is distributed to the Club's servers, barbacks, and captains who work a banquet event.

Plaintiffs allege that barbacks and at least one captain unlawfully participated in the Club's tip pooling program. According to Plaintiffs, the captain and barbacks' participation in the tip pooling program diluted the Plaintiffs' tip pool distributions. Plaintiffs seek recovery of the diluted tip pool distributions, plus statutory interest and liquidated damages. Defendants deny that the captain and barbacks unlawfully participated in the Club's tip pooling program.[1]

Plaintiffs seek discovery of the amounts of the automatic service fees charged for each banquet event. Those amounts are set forth in the Club's customer invoices. The customer invoices also set forth other categories of sensitive, non-public information, such as the Club's prices for

---

[1] Plaintiffs also allege other wage-and-hour claims that are not relevant to the parties' disputes concerning Defendants' proposed protective order.

**VENABLE** LLP

food, beverage, and special service items. The customer invoices also set forth the names and contact information of the Club's customers, including telephone numbers, email addresses, and/or mailing addresses.[2]

Defendants do not oppose discovery of the Club's automatic service fees. Defendants merely seek to prohibit: (1) the public disclosure of the information within the customer invoices on the Court's docket; and (2) Plaintiffs' use of the customer contact information to contact the Club's customers. Defendants propose modest edits to the Court's model protective order for these purposes. A redline version of the Court's model protective order showing Defendants' proposed edits is enclosed herein as Enclosure A. To summarize, Defendants' propose three edits:

1. Adding "customer prices" and "the names and contact information of a Party's customers" to the types of information that may be designated "Confidential" pursuant to the proposed protective order (*see* Proposed Protective Order § 2(a) & (d));

2. Requiring a Producing Party to produce a redacted version of Discovery Material in the event only a portion of the Discovery Material is designated "Confidential" (*see* Proposed Protective Order § 3); and

3. Prohibiting a Party from using customer contact information within Discovery Material for the purpose of contacting a Producing Party's customers; provided, however, that a Party may apply to the Court for leave from the prohibition against using Discovery Material to contact a Producing Party's customers upon a showing of substantial need and just cause (*see* Proposed Protective Order § 9).

Plaintiffs oppose the proposed edits above. After exchanging proposed drafts of the protective order, on November 27, 2023, the parties met and conferred by telephone for approximately 45 minutes in an attempt to resolve their disputes. The parties' efforts were unsuccessful, and they are now at impasse.

**Defendants' Position**

Defendants seek a protective order to prevent the harm they will incur in the event their confidential pricing information is disclosed and their customers are needlessly harassed or dragged into this litigation. The party from whom discovery is sought may seek a protective order pursuant to Federal Rule of Civil Procedure 26(c). Under that rule, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The rule also "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Ampgon v. Costco Wholesale Corp.*, 550 F. Supp. 3d 136, 139 (S.D.N.Y. 2021) (citation omitted). Once the moving party establishes good cause for the protective order, "the burden shifts to the party requesting discovery to demonstrate that the information is sufficiently relevant and necessary to the case to outweigh the harm disclosure would cause to the person from whom he is

---

[2] Upon the Court's request, Defendants will submit an example of a customer invoice for the Court's *in camera* review.



seeking the information." *Four Start Capital Corp. v. NYNEX Corp.*, 183 F.R.D. 91, 110 (S.D.N.Y. 1997) (internal quotations and citation omitted).

Defendants meet the good cause standard here. The potential harm to Defendants and their customers is substantial. The Club is not a typical restaurant business with its menu prices available on a website or other public forum. The Club is a private social organization, closed to the general public. Only Club members and their sponsored guests may see the Club's price information and purchase the Club's banquet event services. The Club protects the confidentiality of its food, beverage, and service item prices in order to retain a competitive advantage in the marketplace. If the Club's competitors learned that information, they could undercut the Club's prices in order to solicit the Club's customers.

The Club also protects the confidentiality of its customer contact information. The Club does not publish its membership roster. Nor does the Club publish the names and contact information of members and their sponsored-guests who purchase the Club's banquet event services. Customer contact information is maintained by the Club confidentially for the limited purpose of communicating about a banquet event and transmitting invoices. The Club's customers naturally value their privacy. It is not difficult to imagine the potential fallout among the Club's customers if their names, home addresses, personal email addresses, and telephone numbers were made publicly available on the internet. The same fallout will occur if Plaintiffs use the Club's customer contact information to harass the Club's customers for no legitimate reason.

The balancing of the equities weighs in favor of approving Defendants' proposed protective order. Plaintiffs cannot establish that the Club's confidential pricing and customer information is relevant to the claims or defenses in this case. The Club's prices for individual line items on each invoice – such as individual food, beverage, and special service items – are not probative of whether the Club's barbacks lawfully participated in the tip pooling program or the damages Plaintiffs allegedly suffered for unpaid tips. The legality of the barbacks' participation in the tip pooling program depends upon the duties the barbacks performed – not any of the information in the Club's customer invoices. As for Plaintiffs' alleged damages, the only relevant information within the customer invoices is the *total* amount charged for all food items, the *total* amount charged for all beverage items, and the automatic service fee (which was always a pre-determined percentage of the sum of the total amount charged for all food and beverage items). The Club does not object to disclosing the Club's confidential pricing information to Plaintiffs. The Club simply wants the information designated "Confidential" pursuant to the Court's protective order, so that the information may not become publicly available on the Court's docket.

Plaintiffs also cannot establish a legitimate need to use the Club's customer contact information. When pressed for an explanation during the parties' meet and confer, Plaintiffs stated that they *may* want to contact the Club's customers in the future about potential employment or business opportunities. Plaintiffs' purported explanation strains credulity. This is not a non-competition case involving parties seeking to poach one another's client base. Plaintiffs are banquet event servers, whereas the Club's customers are primarily persons or businesses without any connection to the hospitality industry. *See U.S. v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (recognizing that "the privacy interests of innocent third parties should weigh heavily in a court's

**VENABLE** LLP

balancing equation" for consideration of a protective order) (*quoting Gardner v. Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990)). It is no wonder, then, that when Defendants asked Plaintiffs to identify the types of employment or business opportunities they sought to discuss with the Club's customers, Plaintiffs' attorneys responded, "I don't know."

The most logical explanation is that Plaintiffs seek to harass the Club's customers, possibly under the mistaken belief that such tactics may generate settlement leverage in this case. That behavior should not be permitted by this Court. Even when customer information is relevant (unlike the case here), courts will still impose limitations upon the disclosure and use of the information produced during discovery. *See, e.g., Asch/Grossbardt Inc. v. Asher Jewelry Co.*, No. 02 Civ. 5914 (SAS), 2003 WL 660833, at *3 (S.D.N.Y. Feb. 28, 2003) (ordering customer information produced on an "attorneys' eyes only" basis). Courts also routinely order the redaction of personal contact information, especially as to non-parties. *See Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 620 (C.D. Cal. 2007) (recognizing non-parties' privacy rights and ordering production of discoverable records only after customer names and contact information were redacted); *Burgess v. Town of Wallingford*, No. 11-CV-1129 (CSH), 2012 WL 4344194, at *11 (D. Conn. Sept. 21, 2012) (ordering redaction of witnesses' personal contact information from discovery records). Accordingly, Defendants respectfully request the Court approve their proposed protective order.

## Plaintiffs' Position

Plaintiffs oppose Defendants' edits to the Court's confidentiality form. Plaintiffs were willing to agree to keep the invoices confidential for litigation purposes. However, Plaintiffs could not agree to the redaction of customer names and contact information for three reasons: 1) There is no legal basis for protecting customer names and contact information are generally not confidential or trade secret information; and 2) according to Defendants' edits to the confidentiality form, by agreeing to make the customer names and contact information confidential, Plaintiffs were prohibited from contacting any customers at any time from the date of the agreement in perpetuity which made it a defacto court regulated non-solicitation and non-compete agreement; and 3) Plaintiffs have had no history of misuse of the customer information to date. Plaintiffs were willing to agree to pricing information. However, there was no legal basis for redacting this information either.

1) Defendants lacked a legal basis for designating customer names and contact information confidential. A basis for designating business records as confidential is to protect trade secret information. In Mkts, this Court defined, "[a] trade secret …as any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. [internal quotes and citations omitted]" Mkts. Grp. Inc. v. Oliveira, 2020 US Dist. LEXIS 20709 at*15; 18cv2089(GHW)(RWL)(SDNY, Feb. 3, 2020) This Court held that under New York State case law, "[i]t is well established that where that the employer's past or prospective customers' names are readily ascertainable from sources outside its business, trade secret protection will not attach and their solicitation by the employee will not be enjoined. [internal quotes and citations omitted]" Id. at *16 The members or customers of NYAC are well known public figures and athletes and

4



their contact information is available from their own business or websites that are open and notorious to the public. This court pointed out, "customer information did not possess the attributes of a trade secret where it was readily ascertainable and could be generated from publicly available sources including the Internet. [internal quotes and citations omitted" Id. This court also pointed out that client lists could be confidential when clients were "not readily known in the trade and that was discoverable only through effort." Id. That latter is not the case here because NYAC's website states that it is membership of famous or well known athletes.

2) Pricing data is not confidential information. In *Fairhurst*, the court held that "pricing data and market strategies,… information would not constitute trade secrets." Marietta Corp. v. Fairhurst, 301 AD2d 734 at 738 (3d Dept., January 2, 2003); See also, Devos Ltd. v. United Returns, Inc., 2017 NY Misc. LEXIS 4596 at *10 (Sup Ct. Suffolk Cty, September 28, 2017) (The court ruled, "pricing data and market strategies do not constitute trade secrets.") This court further cautioned against an "overly expansive definition of trade secret so as to encompass nearly all confidential business documents." The pricing data implicated in this case are menu prices offered to members which information could easily be acquired by calling the sales office of NYAC or asking a member how much he paid for a banquet and easily duplicated by other social clubs. Id.

3) Defendants lack a legal basis for imposing a defacto non-solicitation agreement in perpetuity. In Mkts, this court ruled, "[a]s a general rule, New York courts adhere to a strict approach to enforcement of restrictive covenants because their enforcement conflicts with the general public policy favoring robust and uninhibited competition and powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood." Id at *30. After the instant litigation, one or more of Plaintiffs may apply for employment with one of the club members or set up their own catering business and solicit one of the club members. Defendants' confidentiality agreement would unduly and unlawfully sanction in perpetuity, the loss of Plaintiffs' livelihood in either one of these probable scenarios. Again, Plaintiffs have no history of misuse of customer information.

4) At the summary judgment motion phase of this case, invoices that are submitted in support of such motion become judicial documents to which the right of "public access attaches under both the common law and the First Amendment." Lugosch v. Pyramid Co., 435 F3d 110 at *126 (2d Cir., January 10, 2006). Accordingly, Plaintiffs could not agree to make customer information and pricing data confidential in perpetuity when it would be contrary to existing state and federal law.

For the foregoing reasons, the parties respectfully request a pre-motion conference to address the disputes herein.

Respectfully,

*/s/ Nicholas M. Reiter*

Nicholas M. Reiter

cc: All counsel of record

The parties' request for a pre-motion conference is granted. The Court will hold a teleconference regarding the discovery dispute on December 21, 2023 at 10:00 a.m. The parties are directed to the Court's Individual Rules of Practice in Civil Cases, which are available on the Court's website. Rule 2 of the Court's Individual Rules contains the dial-in number for the conference and other relevant instructions. The parties are specifically directed to comply with Rule 2(C) of the Court's Individual Rules. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 37.

SO ORDERED.

Dated: December 12, 2023
New York, New York

GREGORY H. WOODS
United States District Judge